**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

Case No. _____

**RYAN HYDE, individually and on behalf of all others similarly situated,**

**Plaintiff,**

**v.**

**MONARCH CASINO & RESORT, INC. and MONARCH BLACK HAWK, INC.**

**Defendants.**

---

**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT**

---

### SUMMARY

1.     Monarch Casino & Resort, Inc. ("Monarch Casino") and Monarch Black Hawk, Inc. ("Monarch Black Hawk") failed to pay all wages owed to Ryan Hyde and similarly situated workers in violation of Colorado Constitution art. XVIII, § 15, the Colorado Wage Act (CWA), C.R.S. § 8-4-101 *et seq.*, the Colorado Minimum Wage Act (CMWA), C.R.S. § 8-6-101 *et seq.*, and the Colorado Overtime and Minimum Pay Standards Order ("COMPS Order") #39, 7 C.C.R. 1103-1 (collectively, "Colorado Wage-and-Hour Law"), as well as the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

2.     This action seeks to recover the unpaid wages and other damages Monarch Casino and Monarch Black Hawk owe Hyde and all similarly situated workers under the law, including unpaid wages, liquidated damages, penalties, interest, and other remedies provided by federal and Colorado law. Hyde brings this case as a collective action under

the FLSA, 29 U.S.C. § 216(b) and a class action pursuant to Fed. R. Civ. P. 23 to remedy violations of Colorado law.

3.     In particular, this case implicates Monarch Casino's and Monarch Black Hawk's violations of the tip credit requirements under Colorado Wage-and-Hour Law and the FLSA. As a result, Monarch Casino and Monarch Black Hawk failed to pay their employees at the minimum wage rate for all hours worked.

4.     Monarch Casino and Monarch Black Hawk pay their tipped employees, including dealers, servers, and bartenders, below the minimum wage rate by taking advantage of the tip-credit provision of the FLSA and Colorado Wage-and-Hour Law. Under the tip-credit provisions, an employer of tipped employees may, under certain circumstances, pay those employees less than the minimum wage rate by taking a credit against the employer's minimum wage obligations from the tips received from customers. *See*, *e.g.*, 29 U.S.C. § 203(m); *Green v. Perry's Rests. Ltd*., No. Civ. A. 21-CV-0023-WJM-NRN, 2024 U.S. Dist. LEXIS 219993 (D. Colo. Dec. 5, 2024); *Rafferty v. Denny's Inc.*, 13 F.4th 1166, 1172 (11th Cir. 2021).

5.     However, there are strict requirements for an employer to utilize the "tip credit." 29 U.S.C. § 203(m). An employer must advise an employee in advance of its use of the tip credit pursuant to the provisions of section 3(m) of the FLSA. *See id*. (stating that the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection."). That is, the employer must inform the employee: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount

- 2 -

by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

6.    Further, it is illegal for employers to require tipped employees to give up a portion of their tips to ineligible employees, such as management staff. *See Myers v. Copper Cellar Corp*., 192 F.3d 546, 551 (6th Cir. 1999); *Portales v. MBA Inv. Co., LLC,* No. 3:13CV00001, 2014 WL 5795206, at *3 (N.D. Ohio Oct. 16, 2014) ("When an employer includes a non-customarily tipped employee or another employer in a mandatory tip pool, the pool is invalid under FLSA." (citing 29 U.S.C. § 203)); *Bernal v. Vankar Enter., Inc*., 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008).

7.    Additionally, an employer must pay the minimum statutory hourly rate ($2.13 per hour under the FLSA or the Colorado tipped minimum wage). *See* 29 U.S.C. § 203(m). Colorado law establishes a minimum wage within the State of Colorado and recognizes that, under certain circumstances, employers may impose a maximum tip credit on the wages of their tipped employees of up to $3.02. *See* 7 C.C.R. 1103-1; COMPS Order #39. The FLSA, in turn, requires that employers comply with any State law that establishes a higher minimum wage than that established by the FLSA. *See* 29 U.S.C. § 218(a). Therefore, federal law requires that all Colorado employers comply with the minimum wage standards set forth by Colorado law and limits the maximum allowable tip credit to $3.02. *See Hanke v. Vinot Pinot Dining, LLC*, No. Civ. A. 2:15-cv-1873-SMM, Dkt. 51, at 4:6-11 (D. Ariz. Mar. 21, 2018) ("[B]oth

the FLSA and AWA allow Arizona employers to take a maximum tip credit of $3.00 against their minimum wage obligations to 'tipped employees.'"); *see also Montijo v. Romulus, Inc*., 2015 WL 1470128, at *5 n.4 (D. Ariz. Mar. 30, 2015) (same).

8. Moreover, an employer cannot pay below the minimum wage to tipped employees and require those tipped employees to perform non-tipped work that is unrelated to the tipped occupation. *See Romero v. Top-Tier Colorado LLC*, 849 F.3d 1281, 1285 (10th Cir. 2017); *see also Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties…such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work."); *Osman v. Grube, Inc.,* No. 16-CV-802, 2017 WL 2908864, at *4 (N.D. Ohio July 7, 2017) (holding an employer may not take a tip credit for the time that a tipped employee spends on work that is not related to the tipped occupation); *Roussell v. Brinker Intern., Inc.,* No. 05 Civ. 3733, 2008 WL 2714079, at *12 (S.D. Tex. July 9, 2008) ("An employer may take a tip credit for an employee that works 'dual jobs,' but only for the time the employee spends working in his 'tipped employee' capacity." (quoting 29 C.F.R. 531.56(e))).

9. Further, an employer cannot require its tipped employees to perform non-tipped work that is related to the employees' tipped occupation but exceeds 20 percent of the employees' time worked during a workweek. *See Green v. Perry's Rests. Ltd*., No. Civ. A. 21-CV-0023-WJM-NRN, 2024 U.S. Dist. LEXIS 219993 (D. Colo. Dec. 5, 2024);

*Marsh v. J. Alexander's, LLC,* 905 F.3d 610, 626-28 (9th Cir. 2018) (adopting 20% standard for dual jobs regulation and finding the DOL's opinion on dual jobs for tipped workers to be entitled to deference); *Fast v. Applebee's Intern., Inc.,* 638 F.3d 872, 881 (8th Cir. 2011) (granting the DOL's 20% standard deference); *Driver v. AppleIllinois, LLC*, No. 06 Civ. 6149, 2012 WL 3716482, at *2 (N.D. Ill. Aug. 27, 2012) ("An employer may take a tip credit only for hours worked by [an] employee in an occupation in which [he] qualifies as a tipped employee."); *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (holding the court indirectly cast its imprimatur on the DOL's aforementioned dual-jobs regulation and Field Operations Handbook, citing both the "related to" standard in 29 C.F.R. § 531.56(e) and the 20% standard in § 30d00(e)); *Flood v. Carlson Restaurants, Inc.*, No. 13 Civ. 6458 (AT), 2015 WL 1396257 (S.D.N.Y. Mar. 27, 2015) (denying Defendant's motion to dismiss explaining that the 20% standard is a reasonable interpretation of the FLSA and ultimately granting 216(b) notice); *Ide v. Neighborhood Restaurant Partners, LLC*, No. 13 Civ. 509 (MHC), 2015 WL 11899143, at *6 (N.D. Ga., 2015) ("[A] reasonable interpretation of § 531.56(e) is that [Hyde] would be entitled to minimum wage if she spends more than twenty percent of her time performing related but non-tipped duties."); *Crate v. Q's Restaurant Group LLC*, 2014 WL 10556347, at *4 (M.D. Fla., 2014) ("[T]he Court concludes that the 20% rule clarifies the ambiguity contained in 29 C.F.R. § 531.56(e) by delineating how much time a tipped employee can engage in related, non-tip-producing activity before such time must be compensated directly by the employer at the full minimum wage rate.").

10.    Monarch Casino and Monarch Black Hawk violated the tip credit requirements in the following respects:

a.    **Violation for failure to inform:** Monarch Casino and Monarch Black Hawk failed to inform Hyde of the following: (1) the amount of the cash wage that is to be paid to him; (2) the amount of the tip credit claimed and the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; (4) that the hourly wage paid to Hyde and the Tipped Class Members could not be lower than the minimum tipped wage; and (5) that the tip credit shall not apply to any employee who does not receive the notice. Monarch Casino and Monarch Black Hawk also failed to provide Hyde with a new notice each time the hourly rate of Hyde changed. Monarch Casino and Monarch Black Hawk also failed to display a COMPS Order poster for the current year. Moreover, Monarch Casino and Monarch Black Hawk failed to include a copy of the COMPS Order, or COMPS Order poster, within the employee handbook.

b.    **Violation for making illegal deductions that reduced the direct wage of Hyde below the minimum required hourly wage for tipped employees**: Hyde was required to purchase certain clothing to work for Monarch Casino and Monarch Black Hawk, which reduced his wages below the minimum hourly wage required for tipped employees. These expenses include aprons and shirts. Further, under Colorado Wage-and-Hour Law, the costs of such uniforms must be paid by the employer and Monarch Casino and Monarch Black Hawk must reimburse Hyde for these costs.

c.    **Violation for taking Hyde's tips and giving them to workers who are not eligible to participate in a tip pool:** For example, Monarch Casino and Monarch Black Hawk employ workers in dual-jobs positions where supervisors also work as card dealers during some shifts. Hyde and the Tipped Class Members were required to give up a portion of their tips to the supervisors who happened to work in dual-jobs positions. A supervisor holds a non-tipped position and is ineligible to share in the tip pool. Also, customers in the casino were not notified in writing that tips they give will be pooled with other workers. This notice is required by Colorado Wage-and-Hour Law.

d.  **Violation for performing work unrelated to tipped occupation:** Hyde was required to perform improper types, and excessive amounts, of non-tipped work unrelated to his tipped occupation.

e.  **Violation for performing non-tipped side work in excess of 20% of the time spent working in the week**: Hyde was required to spend greater than 20% of his time performing non-tip-producing work related to his tipped occupation.

11.    As a result of these violations, Monarch Casino and Monarch Black Hawk lost the ability to use the tip credit and therefore must compensate Hyde and all similarly situated workers at the full minimum wage rate, unencumbered by the tip credit, reimburse them for all work-related expenses, and reimburse them for all tips contributed to the invalid tip pool.

12.    Additionally, Monarch Black Hawk and Monarch Casino violated the Colorado Healthy Families and Workplaces Act. Colorado law guarantees workers up to 48 hours of paid leave per year that is to be paid at the same hourly rate the employee normally earns for hours worked. Monarch Black Hawk and Monarch Casino failed to provide the 48 hours of paid leave each year since the law was enacted, failed to provide the required notice about each employee's right to receive the 48 hours of paid leave, and failed to pay the wages owed.

13.    Furthermore, Monarch Black Hawk and Monarch Casino failed to pay all vacation time earned by their employees upon separation. Vacation pay is a form of wages protected by Colorado Wage-and-Hour Law. These wages are the property of the employees. Monarch Black Hawk and Monarch Casino violated the law by failing to pay these wages after their employees' separation.

14.     Finally, Monarch Black Hawk and Monarch Casino failed to pay for all hours worked by their employees. Under Colorado Wage-and-Hour Law, "'time worked' means time during which an employee is performing labor or services for the benefit of an employer, including all time s/he is suffered or permitted to work, whether or not required to do so." *See* 7 C.C.R. § 1103-1(1.9). Monarch Black Hawk and Monarch Casino failed to pay for all pre-shift work performed by their employees. As a result of these violations, Monarch Black Hawk and Monarch Casino owe Hyde and all similarly situated workers unpaid wages, unpaid overtime wages, liquidated damages, penalties, interest, costs, and expenses.

### JURISDICTION & VENUE

15.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

16.     This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

17.     Separately, this Court has original jurisdiction over Hyde's state law claims pursuant to the Class Action Fairness Act found in 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and some of the class members are citizens of a state different from that of Monarch Casino and/or Monarch Black Hawk.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events at issue occurred in this District.

19. Hyde worked for Monarch Casino and Monarch Black Hawk in this District, and events giving rise to the claims occurred in this District.

**PARTIES**

20. **Ryan Hyde is a natural person.**

21. Hyde was, at all relevant times, an employee of Monarch Casino.

22. Hyde was, at all relevant times, an employee of Monarch Black Hawk.

23. Hyde worked for Monarch Casino and Monarch Black Hawk in Colorado.

24. Hyde worked for Monarch Casino and Monarch Black Hawk as a dealer.

25. Hyde was paid by Monarch Casino and Monarch Black Hawk an hourly rate that was less than the applicable minimum wage rate.

26. Monarch Casino and Monarch Black Hawk have claimed the tip credit with regard to their payment of Hyde.

27. Hyde represents at least five groups of similarly situated employees of Monarch Casino and Monarch Black Hawk.

28. Hyde represents a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). The "FLSA Collective" is defined as:

> **All persons employed by Monarch Casino and/or Monarch Black Hawk in the United States who were paid on an hourly rate basis and whom Monarch Casino and/or Monarch Black Hawk claimed a tip credit at any time during the three-year period prior to the filing of this Complaint, until the entry of judgment.**

29. Hyde represents a class of similarly situated workers under Colorado law pursuant to Federal Rule of Civil Procedure 23. This "Tipped Class" is defined as:

> **All persons employed by Monarch Black Hawk in Colorado who were paid on an hourly rate basis and whom Monarch Black Hawk claimed a tip credit at any time during the three-year period prior to the filing of this Complaint, until the entry of judgment.**

30. Hyde represents a class of similarly situated workers under Colorado law pursuant to Federal Rule of Civil Procedure 23. This "Dealer Class" is defined as:

> **All persons employed by Monarch Black Hawk in Colorado and who were paid on an hourly rate basis and who worked as card dealers at any time during the three-year period prior to the filing of this Complaint, until the entry of judgment.**

31. Hyde represents a class of similarly situated workers under Colorado law pursuant to Federal Rule of Civil Procedure 23. This "HFWA Class" is defined as:

> **All persons employed by Monarch Black Hawk in Colorado at any time during the three-year period prior to the filing of this Complaint, until the entry of judgment.**

32. Hyde represents a class of similarly situated workers under Colorado law pursuant to Federal Rule of Civil Procedure 23. This "Vacation Pay Class" is defined as:

> **All persons employed by Monarch Black Hawk in Colorado who had unused vacation time at the separation of their employment that was not paid by Monarch Black Hawk at any time during the three-year period prior to the filing of this Complaint, until the entry of judgment.**

33. Throughout this Complaint, the FLSA Collective members, Tipped Class members, Dealer Class members, HFWA Class members, and Vacation Pay Class members are referred to collectively as the "Similarly Situated Workers."

34. The Tipped Class Members, Dealer Class Members, HFWA Class Members, and the Vacation Pay Class Members are referred to collectively as the "Colorado Class Members."

35. **Defendant Monarch Casino & Resort, Inc. ("Monarch Casino")** is a foreign corporation.

36. Monarch Casino does business in a systematic and continuous manner throughout Colorado and this District.

37. Monarch Casino may be served by service upon its registered agent, **National Registered Agents, Inc., 7700 E. Arapahoe Rd., Ste. 220, Centennial, CO 80112**, or by any other method allowed by law.

38. **Defendant Monarch Black Hawk, Inc. ("Monarch Black Hawk")** is a domestic corporation.

39. Monarch Black Hawk may be served by service upon its registered agent, **National Registered Agents, Inc., 7700 E. Arapahoe Rd., Ste. 220, Centennial, CO 80112**, or by any other method allowed by law.

40. "Monarch Casino owns and operates the Atlantis Casino Resort Spa, a hotel and casino in Reno, Nevada (the 'Atlantis') and the Monarch Casino Resort Spa Black Hawk (the 'Monarch Black Hawk'), a hotel and casino in Black Hawk, Colorado." Monarch, 2025 Form 10-K ("Monarch Casino 2025 10-K"), available at https://www.sec.gov/Archives/edgar/data/907242/000110465926018717/mcri-20251231x10k.htm.

41.    "As of December 31, 2025, [Monarch Casino] employed approximately 2,740 employees across both properties." Monarch Casino 2025 10-K.

42.    Monarch Casino "believe[s] that [this] team is the most important asset in [its] organization." Monarch Casino 2025 10-K.

43.    Monarch Casino "own[s] separate parcels of land located next to the Atlantis and a parcel of land with an industrial warehouse located between Denver, Colorado and Monarch Black Hawk. We also own Chicago Dogs Eatery, Inc. and Monarch Promotional Association Inc., both of which were formed in relation to licensure requirements for extended hours of liquor operation in Black Hawk, Colorado." Monarch Casino 2025 10-K.

44.    Monarch Casino's "business strategy is to maximize revenues, operating income and cash flow primarily through [its] casino, food and beverage and hotel operations at the Atlantis and Monarch Black Hawk." Monarch Casino 2025 10-K.

45.    Monarch Casino "focus[es] on delivering exceptional service and value to [its] guests" at the Atlantis and Monarch Black Hawk. Monarch Casino 2025 10-K.

46.    Monarch Casino has a "hands-on management style" related to its consolidated subsidiaries. Monarch Casino 2025 10-K.

47.    Monarch Casino's "hands-on management style focuses on customer service and cost efficiencies." Monarch Casino 2025 10-K.

48.    Monarch Casino's "management focus is on employee retention." Monarch Casino 2025 10-K.

49.    Monarch Casino explains: "We are currently entirely dependent upon our Atlantis Casino Resort and our Monarch Black Hawk for all of our operating cash flow." Monarch Casino 2025 10-K.

50.    Monarch Casino identified that its "operating results may be affected by … significant risk factors and trends." Monarch Casino 2025 10-K.

51.    The "significant risk factors and trends" that Monarch Casino identified as potentially affecting its operating results include:

> Monarch Black Hawk … is experiencing labor challenges, resulting from the distance to the staffing filter markets of Golden, Colorado and the Denver metro area and low unemployment at those markets.

Monarch Casino 2025 10-K.

52.    Monarch Casino is "currently self-insured up to certain stop loss amounts for Atlantis workers' compensation and certain medical benefit costs provided to all of our employees." Monarch Casino 2025 10-K.

53.    Monarch Casino's "management is consistently focused on controlling expenses and finding cost savings." Monarch Casino 2025 10-K.

54.    Monarch Casino "measure[s] … performance using expense margin, which is a percentage of direct expenses." Monarch Casino 2025 10-K.

55.    The "direct expenses" identified by Monarch Casino "includ[e] labor … related to the gaming, food and beverage, or hotel operation to the net gaming, food and beverage, or hotel revenues" at the Atlantis and Monarch Black Hawk. Monarch Casino 2025 10-K.

56. "As required by the state of Colorado, [Monarch Casino] [is] fully insured for Monarch Black Hawk workers' compensation costs." Monarch Casino 2025 10-K.

57. Monarch Casino maintains a savings plan under Section 401(k) of the Internal Revenue Code, for which its employees, including workers at Monarch Black Hawk, are eligible. Monarch Casino 2025 10-K.

58. Regarding Monarch Black Hawk, Monarch Casino's "marketing efforts are directed toward patrons from the Denver metropolitan area and Colorado mountain areas." Monarch Casino 2025 10-K.

59. "If [Monarch Casino] [were to] lose the services of … senior Atlantis or Monarch Black Hawk management personnel, and cannot replace such persons in a timely manner with competent and experienced personnel, [its] business could be materially adversely affected." Monarch Casino 2025 10-K.

60. Monarch Casino operates across all its "consolidated subsidiaries" as a single integrated employer under the FLSA.

61. Monarch Casino and Monarch Black Hawk operate as a single integrated employer under the FLSA.

62. At all relevant times, the operation of all of Monarch Casino's consolidated subsidiary entities was interrelated.

63. At all relevant times, Monarch Casino and Monarch Black Hawk had centralized/shared back-office operations, including but not limited to human resources, accounting, marketing, risk management, financial operations and legal compliance.

- 14 -

64. At all relevant times, Monarch Casino and its consolidated subsidiaries had centralized/shared back-office operations, including but not limited to human resources, accounting, marketing, risk management, financial operations and legal compliance.

65. For example, Monarch Casino and Monarch Black Hawk's payroll operations were and are directed by personnel—including their Corporate Payroll Manager Linda von Batsch and Payroll Manager Marcia Canepa—through Monarch Casino and/or the Atlantis's offices in Reno, Nevada.

66. At all relevant times, Monarch Casino exerted operational control over its subsidiaries and alter egos.

67. At all relevant times, Monarch Casino substantially controlled the terms and conditions of employment for workers of its subsidiaries and alter egos.

68. At all relevant times, Monarch Casino had common control and management of labor relations regarding employees of its subsidiaries and alter egos.

69. At all relevant times, Monarch Casino exerted operational control over its subsidiaries and alter egos, including Monarch Black Hawk.

70. At all relevant times, Monarch Casino substantially controlled the terms and conditions of employment for workers of its subsidiaries and alter egos, including Monarch Black Hawk.

71. At all relevant times, Monarch Casino had common control and management of labor relations regarding employees of its subsidiaries and alter egos, including Monarch Black Hawk.

72. At all relevant times, Monarch Casino owned Monarch Black Hawk.

73. At all relevant times, Monarch Casino exerted operational control over Monarch Black Hawk.

74. At all relevant times, Monarch Casino had the authority to, and did, set pay practices for employees of Monarch Black Hawk.

75. At all relevant times, Monarch Casino had the authority to, and did, determine the amount paid to employees of Monarch Black Hawk.

76. At all relevant times, Monarch Casino had the authority to, and did, determine the schedules worked by employees of Monarch Black Hawk.

77. At all relevant times, Monarch Casino had the authority to, and did, hire employees of Monarch Black Hawk.

78. At all relevant times, Monarch Casino had the authority to, and did, fire employees of Monarch Black Hawk.

79. At all relevant times, Monarch Casino had the authority to, and did, discipline employees of Monarch Black Hawk.

80. At all relevant times, Monarch Casino had the authority to, and did, supervise employees of Monarch Black Hawk.

81. The employees that Monarch Casino could hire, fire, discipline, and supervise for Monarch Black Hawk included Hyde.

82. The employees that Monarch Casino could hire, fire, discipline, and supervise for Monarch Black Hawk included the Similarly Situated Workers.

83. Monarch Casino and Monarch Black Hawk employed and/or jointly employed Hyde.

84.     Monarch Casino and Monarch Black Hawk employed and/or jointly employed the Similarly Situated Workers.

85.     Monarch Casino and Monarch Black Hawk employed and/or jointly employed the Tipped Class.

86.     Monarch Casino and Monarch Black Hawk employed and/or jointly employed the Dealer Class.

87.     Monarch Casino and Monarch Black Hawk employed and/or jointly employed the HFWA Class.

88.     Monarch Casino and Monarch Black Hawk employed and/or jointly employed the Vacation Pay Class.

89.     Monarch Casino and Monarch Black Hawk are joint employers of Hyde for purposes of the FLSA.

90.     Monarch Casino and Monarch Black Hawk are joint employers of the FLSA Collective for purposes of the FLSA.

91.     Monarch Casino and Monarch Black Hawk are joint employers of the FLSA Collective for purposes of the FLSA.

92.     Monarch Casino and Monarch Black Hawk are joint employers of Hyde for purposes of Colorado law.

93.     Monarch Casino and Monarch Black Hawk are joint employers of the Tipped Class for purposes of Colorado law.

94.     Monarch Casino and Monarch Black Hawk are joint employers of the Dealer Class for purposes of Colorado law.

95. Monarch Casino and Monarch Black Hawk are joint employers of the HFWA Class for purposes of Colorado law.

96. Monarch Casino and Monarch Black Hawk are joint employers of the Vacation Pay Class for purposes of Colorado law.

### COVERAGE UNDER THE FLSA

97. At all relevant times, Monarch Casino was an employer of Hyde within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

98. At all relevant times, Monarch Casino was and is an employer of the FLSA Collective members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

99. At all relevant times, Monarch Casino was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

100. During at least the last three years, Monarch Casino has had gross annual sales in excess of $500,000.

101. At all relevant times, Monarch Casino operated simultaneously in two or more states.

102. Monarch Casino was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

103. Monarch Casino employs many workers, including Hyde, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

104. The goods and materials handled, sold, or otherwise worked on by Hyde and other Monarch Casino employees and that have been moved in interstate commerce include, but are not limited to, office supplies, computer equipment, telecommunications equipment, cleaning supplies, food and beverages, and hotel supplies.

105. At all relevant times, Monarch Black Hawk was an employer of Hyde within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

106. At all relevant times, Monarch Black Hawk was and is an employer of the FLSA Collective members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

107. At all relevant times, Monarch Black Hawk was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

108. During at least the last three years, Monarch Black Hawk has had gross annual sales in excess of $500,000.

109. At all relevant times, Monarch Black Hawk operated simultaneously in two or more states.

110. Monarch Black Hawk was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

111. Monarch Black Hawk employs many workers, including Hyde, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

112.   The goods and materials handled, sold, or otherwise worked on by Hyde and other Monarch Black Hawk employees and that have been moved in interstate commerce include, but are not limited to, office supplies, computer equipment, telecommunications equipment, cleaning supplies, food and beverages, and hotel supplies.

## FACTS

113.   Monarch Casino and Monarch Black Hawk operate gaming, dining, and hospitality facilities, including in Colorado and Nevada.

114.   To provide their services to their customers, Monarch Casino and Monarch Black Hawk employ hourly paid workers as card dealers, waitresses, bartenders, security guards, and other hourly paid positions.

115.   Unfortunately, Monarch Casino and Monarch Black Hawk failed to pay their employees the wages owed to them under the FLSA and Colorado Wage-and-Hour Law.

**A.      Monarch Casino and Monarch Black Hawk failed to comply with the tip credit requirements under the FLSA and Colorado Wage-and-Hour Law.**

116.   As part of their casino business, Monarch Casino and Monarch Black Hawk employ workers who earn tips. These workers include card dealers, servers, and bartenders.

117.   Monarch Casino and Monarch Black Hawk pay these tipped workers less than the minimum wage.

118. Monarch Casino and Monarch Black Hawk attempted to utilize the tip credit to meet their minimum wage obligation to their tipped workers, including Hyde and the FLSA Collective members.

119. The tip credit has a harmful effect on workers that threatens the health of the economy. Adasina Social Capital, a company representing investors with more than $538 billion in assets, has issued a letter to large corporations operating restaurants advising of the ills of using the tip credit. *See* Adasina Social Capital, https://adasina.com/investor-statement-in-support-of-ending-the-subminimum-wage/, last visited July 30, 2026.

120. Given the harmful effects of the tip credit, there are strict requirements that must be met by an employer who seeks to utilize the tip credit to meet its minimum wage obligations.

121. In this case, Monarch Casino and Monarch Black Hawk did not satisfy the strict requirements to use the tip credit.

122. First, Monarch Casino and Monarch Black Hawk failed to inform Hyde and the FLSA Collective members of Monarch Casino's and Monarch Black Hawk's intent to claim the tip credit to meet their minimum wage obligation at the time Hyde and the FLSA Collective members were hired.

123. Specifically, Monarch Casino and Monarch Black Hawk failed to inform Hyde and the FLSA Collective members of the following: (1) the amount of the cash wage that is to be paid to them; (2) the amount of the tip credit claimed and the amount by which the wages of the tipped employee are increased on account of the tip credit; (3)

- 21 -

that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; (4) that the hourly wage paid to Hyde and the FLSA Collective members could not be lower than the minimum tipped wage; and (5) that the tip credit shall not apply to any employee who does not receive the notice.

124.    Monarch Casino and Monarch Black Hawk also failed to provide Hyde and the FLSA Collective members with a new notice each time the hourly rate of Hyde and the FLSA Collective members changed.

125.    Monarch Casino and Monarch Black Hawk also failed to display a COMPS Order poster for the current year. Moreover, Monarch Casino and Monarch Black Hawk failed to include a copy of the COMPS Order, or COMPS Order poster, within the employee handbook.

126.    Monarch Casino and Monarch Black Hawk further violated both the FLSA and Colorado Wage-and-Hour Law by requiring Hyde and the FLSA Collective members to pay for work-related expenses that should have been paid by Monarch Casino and/or Monarch Black Hawk. These expenses include aprons and shirts. Indeed, Hyde and the FLSA Collective members were required to purchase these items in order to work for Monarch Casino and Monarch Black Hawk, which reduced their wages below the minimum hourly wage required for tipped employees. Further, under Colorado Wage-and-Hour Law, the costs of such uniforms must be paid by the employer and Monarch Casino and Monarch Black Hawk must reimburse Hyde and the Tipped Class Members for these costs.

127.   Monarch Casino and Monarch Black Hawk also maintained a policy and practice whereby tipped employees were required to perform work unrelated to their tipped occupation. As a result, Hyde and the FLSA Collective members were engaged in dual occupations while being compensated below the minimum wage. There were long periods of time in the casinos when there were no customers and no opportunity to earn tips. These periods lasted hours at times. During these periods, Hyde and the FLSA Collective members were still required to perform work but no tips could be earned for this work. No tip credit can be taken during this time.

128.   Monarch Casino and Monarch Black Hawk also maintained a policy and practice whereby tipped employees were required to spend a substantial amount of time, in excess of 20 percent and/or greater than 30 consecutive minutes, performing non-tip-producing work related to the employees' tipped occupation while being paid below the minimum wage. These activities included counting cards, stacking cards, and helping others with a card change in the casinos.

129.   Monarch Casino and Monarch Black Hawk also did not track or record the amount of time the tipped employees spent performing non-tipped work, including directly supporting work and work unrelated to their tipped occupation, even though Monarch Casino and Monarch Black Hawk were capable of doing so. Monarch Casino and Monarch Black Hawk's timekeeping system was capable of tracking multiple job codes for different work assignments, but Monarch Casino and Monarch Black Hawk failed to track the specific tasks for Hyde or the FLSA Collective members.

130. Moreover, Monarch Casino and Monarch Black Hawk implemented an illegal tip pool where tipped employees were required to share tips with supervisors. For example, Monarch Casino and Monarch Black Hawk employ workers in dual-jobs positions where supervisors also work as card dealers during some shifts. Hyde and the FLSA Collective members were required to give up a portion of their tips to the supervisors who happened to work in dual-jobs positions. A supervisor holds a non-tipped position and is ineligible to share in the tip pool.

131. Furthermore, customers in the casino were not notified in writing that tips they give will be pooled with other workers. This notice is required by Colorado Wage-and-Hour Law.

132. Accordingly, the tip pool is invalid and Monarch Casino and Monarch Black Hawk owe Hyde, the FLSA Collective members, and the Tipped Class members money for all tips taken from them for this illegal tip pool.

133. Because Monarch Casino and Monarch Black Hawk violated the requirements to claim the tip credit, Monarch Casino and Monarch Black Hawk lost the right to take a credit toward their minimum wage obligation to Hyde, the FLSA Collective members, and the Tipped Class members.

134. Monarch Casino and Monarch Black Hawk knew or should have known that their policies and practices violated the FLSA and Colorado Wage-and-Hour Law, and Monarch Casino and Monarch Black Hawk have not made a good faith effort to comply with the FLSA or Colorado Wage-and-Hour Law. Rather, Monarch Casino and Monarch Black Hawk acted knowingly, willfully, and/or with reckless disregard of the law, and

carried and continue to carry out the illegal pattern and practice regarding their tipped employees as described in this Complaint. Indeed, Monarch Casino and Monarch Black Hawk's method of paying Hyde, the FLSA Collective members, and the Tipped Class members was not based on a good faith and reasonable belief that their conduct complied with the law.

135. Given that Monarch Casino and Monarch Black Hawk failed to comply with the requirements to take the tip credit, Monarch Casino and Monarch Black Hawk have lost the ability to claim the tip credit and owe Hyde and the Tipped Class Members pay at the full minimum wage rate per hour for all hours they worked for Monarch Casino and Monarch Black Hawk plus reimbursement of all expenses incurred and reimbursement of all tips contributed to the tip pool.

**B.    Monarch Black Hawk and Monarch Casino violated the HFWA.**

136. In 2020, the Colorado Legislature passed the Colorado Healthy Families and Workplaces Act ("HFWA"). The HFWA guarantees Colorado workers up to 48 hours of paid leave per year, for use for a variety of health and safety purposes, which employees "earn" at a rate of 1 hour of leave for every 30 hours worked.

137. The HFWA applies to all employers in Colorado, including Monarch Black Hawk and Monarch Casino.

138. All employees in Colorado are covered by the HFWA, including Hyde and the HFWA Class members.

139. However, Monarch Black Hawk and Monarch Casino violated the HFWA.

140. First, Monarch Black Hawk and Monarch Casino failed to provide the 48 hours of paid leave as required by the HFWA until January 2025.

141. Second, Monarch Black Hawk and Monarch Casino failed to provide the required notice to inform employees of their rights under the HFWA.

142. Monarch Black Hawk and Monarch Casino failed to provide a poster in a visible place at the Monarch Black Hawk Casino in Colorado regarding employee rights under the HFWA.

143. Monarch Black Hawk and Monarch Casino also failed to provide written notice to each employee, including Hyde and the HFWA Class members, about their rights.

144. Third, Monarch Black Hawk and Monarch Casino failed to pay Hyde and the HFWA Class Members the wages owed to them under the HFWA.

145. The HFWA requires employers to pay "the same hourly rate or salary and … same benefits … the employee normally earns during hours worked," on the same schedule (payday) as regular wages. Colorado INFO #6B.

146. Moreover, Monarch Black Hawk and Monarch Casino were required to pay the accrued sick leave at the same pay rate the employee earns for regular hours of work. Colorado INFO #6B states as follows:

> Same pay rate. Whether the employee's regular pay is hourly or not, pay for leave must be "at least the applicable minimum wage," and "shall include any set hourly or salary rates, shift differentials, tip credits, and commission."

*Id*.

147.    Monarch Black Hawk and Monarch Casino violated this requirement of the HFWA.

148.    Monarch Black Hawk and Monarch Casino initially paid Hyde and the Tipped Class members at their tipped hourly rate of pay. The tipped hourly rate is less than the applicable minimum wage in Colorado.

149.    Monarch Black Hawk and Monarch Casino later raised the pay rate for paid sick leave to the Colorado minimum wage rate in January 2026. However, this pay rate is still unlawful because it does not factor in the tips that Hyde and the Tipped Class Members earned to determine the true hourly pay rate.

150.    C.R.S. § 8-12.3-402(8)(b) states that "Paid sick leave" under the HFWA is "wages," as defined in section 8-4-101 (14). By failing to pay the wages owed to Hyde, the HFWA Class members, and the Tipped Class members, Monarch Black Hawk and Monarch Casino have violated Colorado Wage-and-Hour Law. Monarch Black Hawk and Monarch Casino owe significant unpaid wages to Hyde, the HFWA Class members, and the Tipped Class members.

**C.    Monarch Black Hawk and Monarch Casino failed to pay for all vacation time earned by their employees.**

151.    Colorado INFO #3E states that "Vacation pay is a form of wages protected by the Colorado Wage Act."

152.    Under Colorado law, once an employee earns wages, their right to payment is guaranteed.

153.    "Like other wages, unused vacation must be paid when employees separate from employment, whether they are fired with or without cause, resign with or without notice, or separate for another reason." Colorado INFO #3E.

154.    Here, Monarch Black Hawk and Monarch Casino failed to pay Hyde his unused vacation pay.

155.    Monarch Black Hawk and Monarch Casino also failed to pay the vacation pay at the correct hourly rate to Hyde. Monarch Black Hawk and Monarch Casino failed to factor in the tips that Hyde earned to determine his true hourly rate of pay for purposes of paying vacation pay.

156.    Like Hyde, Monarch Black Hawk and Monarch Casino failed to pay the unused vacation pay to the Vacation Pay Class members.

157.    Like Hyde, Monarch Black Hawk and Monarch Casino failed to pay the vacation pay at the correct hourly rate to Tipped Class members. Monarch Black Hawk and Monarch Casino failed to factor in the tips that the Tipped Class members earned to determine their true hourly rate of pay.

158.    By failing to pay the wages owed to Hyde, the Vacation Pay Class members, and the Tipped Class members, Monarch Black Hawk and Monarch Casino have violated Colorado Wage-and-Hour Law. Monarch Black Hawk and Monarch Casino owe significant unpaid wages to Hyde, the Vacation Pay Class members, and the Tipped Class members.

**D.    Monarch Black Hawk and Monarch Casino failed to pay for all hours worked.**

159.    Colorado Wage-and-Hour Law requires employers to pay employees their agreed wage rates – their minimum or overtime wage rates – for all time worked. *See* COMPS Order, Rules 3, 4.

160.    Under Colorado Wage-and-Hour Law, "'time worked' means time during which an employee is performing labor or services for the benefit of an employer, including all time s/he is suffered or permitted to work, whether or not required to do so." *See* 7 C.C.R. § 1103-1(1.9).

161.    "Time Worked" includes "requiring or permitting employees to be on the employer's premises, on duty, or at a prescribed workplace (but not merely permitting an employee completely relieved from duty to arrive or remain on-premises) — including but not limited to, if such tasks take over one minute, putting on or removing required work clothes or gear (but not a uniform worn outside work as well), receiving or sharing work-related information, security or safety screening, remaining at the place of employment awaiting a decision on job assignment or when to begin work, performing clean-up or other duties "off the clock," **clocking or checking in or out, or waiting for any of the preceding — shall be considered time worked that must be compensated.**" *See* 7 C.C.R. § 1103-1(1.9.1) (emphasis added).

162.    Hyde arrived at work approximately 15-20 minutes prior to the start of his shift and performed compensable work without pay. After parking his car, Hyde was required to swipe his ID badge to enter the worksite. After entering the worksite, Hyde

was required to walk to the casino "cage" to get his tip box needed to perform his work as a dealer.

163.   After gathering his tip box, he then was required to attend a pre-shift meeting. The pre-shift meeting normally occurred approximately 10 minutes before the start of his shift.

164.   During the pre-shift meeting, the daily pre-shift instructions were discussed. These included the table assignments for the dealers, whether there were any events occurring at the casino, and any other relevant information.

165.   After the pre-shift meeting concluded, Hyde normally walked to the table where he was assigned to work as a dealer and clocked in.

166.   However, the time spent gathering the tip box, attending the pre-shift meeting, and walking to the time clock to clock in was unpaid by Monarch Black Hawk and Monarch Casino.

167.   These activities took approximately 15-20 minutes.

168.   Like Hyde, the Dealer Class members were required to gather a tip box prior to the start of their shifts.

169.   Like Hyde, the Dealer Class members were required to attend a pre-shift meeting prior to the start of their shifts.

170.   These pre-shift activities are compensable under Colorado Wage-and-Hour Law.

171.   Colorado INFO #1 states:

● "Time worked" that must be paid is all time performing labor or services for employer benefit, including:

- ○ time employees are suffered or permitted to work, whether or not required; and

- ○ time employers permit or require employees to be on-premises, on duty, or at a prescribed workplace, but not just letting off-duty employees arrive or remain on-site.

- Examples:

  - ○ cleanup or setup (examples: putting on or removing clothes, or gear, worn only at work);

  - ○ checking in/out (timeclock, security/safety screening, etc.), or waiting to do so[.]

172. Colorado never adopted the federal Portal-to-Portal Act, and therefore pre-shift and post-shift activities that are required by an employer are not excluded from compensation, but instead count as time worked that must be paid. *See* INFO #20A. That means that the time spent checking in at the casino cage, attending the pre-shift meetings and the time spent waiting for such activities is compensable under Colorado Wage-and-Hour Law.

173. Moreover, the time spent checking in at the casino cage, attending the pre-shift meetings and the time spent waiting for such activities were required by Monarch Black Hawk and Monarch Casino and were not optional. Hyde and the Dealer Class members were required to comply with Monarch Black Hawk and Monarch Casino's instructions and were required to check in at the casino cage and attend the pre-shift meetings under the threat of discipline, including possible termination.

174. These activities were also undertaken on Monarch Black Hawk's and Monarch Casino's premises, and Hyde and the Dealer Class members were confined to

Monarch Black Hawk and Monarch Casino's premises while they waited for these activities.

175.    Moreover, all time spent after checking in at the casino cage to the time of clock-in is compensable under Colorado Wage-and-Hour Law.

176.    Such time was required by Monarch Black Hawk and Monarch Casino and was conducted on the premises of Monarch Black Hawk and Monarch Casino. Further, such time was conducted for the benefit of Monarch Black Hawk and Monarch Casino because without this time, Hyde and the Dealer Class members could not perform their work for Monarch Black Hawk and Monarch Casino.

177.    INFO #20A provides that Colorado has adopted the "continuous workday" rule. The time spent walking to the time clock to clock in for the day is compensable under the "continuous workday" rule.

178.    Under the continuous workday rule, once the first compensable activity is performed, all subsequent activities performed are compensable regardless of the amount of time each specific individual activity takes. *See* 29 C.F.R. § 790.6(a). The continuous workday rule requires compensation from the start of the first compensable activity to the last compensable activity. *See id*.  Section 790.6(a) states:

> Periods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of hours worked to the same extent as would be required if the Portal Act had not been enacted.

- 32 -

179.    Therefore, Hyde and the Dealer Class members are entitled to compensation from the time they first arrived at the casino cage to the time they clocked-in for the day.

180.    Hyde and the Dealer Class Members were non-exempt employees.

181.    Hyde and the Dealer Class Members were paid on an hourly rate basis.

182.    When they worked more than 12 hours in a day or 40 hours in a workweek, they were entitled to overtime pay.

183.    Due to the substantial pre-shift work at issue, Hyde and the Dealer Class members were not paid for all time worked each day and are owed significant unpaid wages.

184.    Although Monarch Black Hawk and Monarch Casino employ electronic clocking-in technology, this technology was not accessible to Hyde and the Dealer Class members before reaching the casino cage.

185.    Monarch Black Hawk and Monarch Casino's method of paying Hyde and the Dealer Class Members in violation of Colorado Wage-and-Hour Law was not based on a good faith and reasonable belief that their conduct complied with the law. Monarch Black Hawk and Monarch Casino knew the requirement to pay for all time worked, but intentionally and/or recklessly chose not to do so.

### COLLECTIVE ACTION ALLEGATIONS

186.    Hyde brings this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all current and former tipped employees who worked for Monarch

Black Hawk and/or Monarch Casino for at least one week during the three-year period prior to the filing of this action to the present.

187.    Hyde has actual knowledge, through conversations with co-workers, that a class of similarly situated workers exists who have been subjected to the same policies of Monarch Black Hawk and Monarch Casino with respect to the payment of the minimum wage.

188.    The FLSA Collective members are similarly situated to Hyde in that they share the same duties and were subject to the same violations of the FLSA.

189.    Like Hyde, the FLSA Collective members were not given proper notice of the tip credit provisions, were required to perform substantial work that was unrelated to their tip-producing duties, were required to participate in an invalid tip pool, were paid hourly rates below the minimum wage rate, and were required to incur similar work-related expenses.

190.    Like Hyde, the FLSA Collective members performed similar duties and were paid under the same pay system.

191.    Hyde and the FLSA Collective members all labored under the same corporate structure, the same corporate policies, the same corporate chain of command, and pursuant to the rules in the same company handbook.

192.    The names and addresses of the FLSA Collective members are available from Monarch Black Hawk's and Monarch Casino's records. To the extent required by law, notice will be provided to these individuals by first class mail, email, text message, or

by the use of techniques and a form of notice similar to those customarily used in representative actions.

193.    Although the exact amount of damages may vary among the FLSA Collective members in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

194.    As such, the class of similarly situated FLSA Collective members is properly defined as follows:

> **All persons employed by Monarch Casino and/or Monarch Black Hawk in the United States who were paid on an hourly rate basis and whom Monarch Casino and/or Monarch Black Hawk claimed a tip credit at any time during the three-year period prior to the filing of this Complaint, until the entry of judgment.**

### CLASS ACTION ALLEGATIONS

195.    The illegal practices Monarch Casino and Monarch Black Hawk imposed on Hyde were likewise imposed on the Colorado Class members.

196.    Numerous other individuals who worked for Monarch Casino and Monarch Black Hawk were not properly and timely compensated for all hours worked, as required by Colorado law.

197.    Similarly, numerous other individuals were denied the pay and benefits required by the HFWA.

198.    Additionally, numerous other individuals were not paid their earned vacation pay upon separation from Monarch Casino and Monarch Black Hawk.

199.    The Colorado Class Members are so numerous that joinder of all members is impracticable.

200.    Monarch Casino and Monarch Black Hawk imposed uniform practices and policies on Hyde and the Colorado Class members regardless of any individualized factors.

201.    Based on his experience and tenure with Monarch Casino and Monarch Black Hawk, Hyde is aware that Monarch's illegal practices were imposed, respectively, on the Colorado Class members.

202.    Monarch Casino and Monarch Black Hawk's failure to pay wages in accordance with Colorado Wage-and-Hour Law results from generally applicable, systematic policies and practices that are not dependent on the personal circumstances of the Colorado Class members.

203.    Monarch Casino and Monarch Black Hawk's failure to pay the minimum wage, failure to comply with the tip credit requirement, failure to pay for all hours worked, failure to pay for all wages and benefits due under the HFWA, and failure to pay for all vacation pay that was earned result from generally applicable, systematic policies and practices that are not dependent on the personal circumstances of the Colorado Class Members.

204.    Hyde and the Colorado Class members were subjected to the same single decision, policy, and plan.

205.    Whether Monarch Casino and Monarch Black Hawk failed to pay Hyde and the Colorado Class members all wages due as a result of their pay policies can be determined for the entire group from Monarch Casino and Monarch Black Hawk's

common timekeeping, payroll records, and applicable policies and procedures without regard to any individual employee's circumstances.

206.    Monarch Casino and Monarch Black Hawk's failure to pay wages in accordance with Colorado Wage-and-Hour Law results from generally applicable, systematic policies and practices that are not dependent on the personal circumstances of the Colorado Class members.

207.    Hyde's experiences are therefore typical of the experiences of the Colorado Class members.

208.    Hyde has no interest contrary to, or in conflict with, the members of the Tipped Class, Dealer Class, HFWA Class, or Vacation Pay Class. Like each member of the proposed Classes, Hyde has an interest in obtaining the unpaid wages and other damages owed under the law.

209.    A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

210.    Absent this action, many Colorado Class members likely will not obtain redress of their injuries and Monarch Casino and Monarch Black Hawk will reap the unjust benefits of violating Colorado Wage-and-Hour Law.

211.    Furthermore, even if some of the Colorado Class Members could afford individual litigation against Monarch Casino and Monarch Black Hawk, it would be unduly burdensome to the judicial system.

212.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of all Colorado Class Members and provide for judicial consistency.

213.    The respective questions of law and fact common to each of the members of the Tipped Class, Dealer Class, HFWA Class, and Vacation Pay Class predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a.    Whether Hyde and the Tipped Class members were paid at hourly rates less than the applicable minimum wage for all hours worked;

    b.    Whether Monarch Casino and Monarch Black Hawk met the tip credit requirements for Hyde and the Tipped Class members;

    c.    Whether Hyde and the Dealer Class members were paid for all hours worked;

    d.    Whether Hyde and the Dealer Class members were paid overtime at 1.5 times their regular rate of pay for all hours worked in excess of 40 in a workweek, 12 in a workday, or 12 per shift;

    e.    Whether Hyde and the HFWA Class members were paid all wages and benefits due under the HFWA;

    f.    Whether Hyde and the Vacation Pay Class members were paid their earned vacation pay after their separation from Monarch Casino and Monarch Black Hawk;

    g.    Whether Monarch Casino and Monarch Black Hawk's failure to pay minimum and overtime wages at the rates required by law violated Colorado Wage-and-Hour Law;

    h.    Whether Monarch Casino and Monarch Black Hawk have any valid good faith or willfulness defense to paying the applicable wages.

214.    Hyde's claims are typical of the Colorado Class Members. Hyde and the Colorado Class Members have all sustained damages arising out of Monarch Casino and Monarch Black Hawk's illegal and uniform employment policies.

215.    Hyde knows of no difficulty that will be encountered in the management of this litigation that would preclude his ability to go forward as a class or collective action.

216.    Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

### 1ST CAUSE OF ACTION—TIP CREDIT VIOLATIONS OF THE FLSA AS TO HYDE AND THE FLSA COLLECTIVE

217.    Hyde incorporates the allegations in paragraphs 1 through 216.

218.    This count arises from Monarch Casino's and Monarch Black Hawk's violation of the FLSA in connection with their failure to pay the minimum wages. See 29 U.S.C. § 206.

219.    Hyde and the FLSA Collective members were paid hourly rates less than the minimum wage while working for Monarch Casino and Monarch Black Hawk.

220.    Hyde and the FLSA Collective Members were not exempt from the minimum wage requirements of the FLSA.

221.    Given that Monarch Casino and Monarch Black Hawk failed to meet the requirements to claim the tip credit, Monarch Casino and Monarch Black Hawk were not permitted to claim the tip credit against the overtime wages due to Hyde and the FLSA Collective members. Therefore, Hyde and the FLSA Collective members are entitled to unpaid overtime wages in addition to unpaid minimum wages.

222.    The FLSA provides that overtime is to be paid at an hourly rate of 1.5 times the regular rate of pay for all hours worked over 40 in a workweek.

223.    Hyde and the FLSA Collective Members were not paid at 1.5 times the regular rate of pay for all hours worked over 40 in a workweek.

224.    Monarch Casino's and Monarch Black Hawk's practices and policies of not paying for all overtime compensation at the rate of one and one-half times the regular rate of pay for all hours worked over 40 each workweek violate the FLSA. *See* 29 U.S.C. § 207.

225.    Monarch Casino's and Monarch Black Hawk's actions and/or omissions were not in good faith.

226.    Monarch Casino's and Monarch Black Hawk's failure to pay the minimum wage and overtime wages to Hyde and the FLSA Collective Members, in violation of the FLSA, was willful and not based on a good faith belief that their conduct did not violate the FLSA. The foregoing conduct, as alleged, constitutes a willful violation within the meaning of the FLSA. 29 U.S.C. § 255(a).

**2ND CAUSE OF ACTION—TIP CREDIT VIOLATIONS OF COLORADO WAGE-AND-HOUR LAW AS TO HYDE AND THE TIPPED CLASS**

227.    Hyde incorporates the allegations in paragraphs 1 through 216.

228.    This count arises from Monarch Casino's and Monarch Black Hawk's violation of Colorado law in failing to pay minimum wages and overtime wages to Hyde and the Tipped Class members.

229.    Monarch Casino and Monarch Black Hawk paid Hyde and the Tipped Class members below the minimum wage rate in Colorado, in violation of the Colorado Minimum

Wage Orders, the Colorado Overtime & Minimum Pay Standards Orders, 7 C.C.R. 1103-1, the Colorado Minimum Wage Act, C.R.S. § 8-6-101, et seq., and the Colorado Wage Claim Act, C.R.S. § 8-4-101, et *seq*.

230.   During their employment, Hyde and the Tipped Class members were not exempt.

231.   Monarch Casino's and Monarch Black Hawk's failure to comply with the minimum wage requirements of Colorado Wage-and-Hour Law and the overtime requirement of Colorado Wage-and-Hour Law resulted in Hyde and the Class Members being paid less than the minimum wage rate and being paid overtime at rates less than time and one half their regular rates of pay.

232.   Monarch Casino's and Monarch Black Hawk's failure to pay the minimum wage and overtime wages to Hyde and the Tipped Class members, in violation of Colorado Wage-and-Hour Law, was willful and not based on a good faith belief that their conduct did not violate Colorado Wage-and-Hour Law.

### 3RD CAUSE OF ACTION—FAILURE TO PAY WORK EXPENSES UNDER COLORADO WAGE-AND-HOUR LAW AS TO HYDE AND THE TIPPED CLASS

233.   Hyde incorporates the allegations in paragraphs 1 through 216.

234.   This count arises from Monarch Casino's and Monarch Black Hawk's violation of Colorado law in failing to pay for the uniforms and expenses incurred by Hyde and the Tipped Class members.

235.    During their employment with Monarch Casino and Monarch Black Hawk, Hyde and the Tipped Class members were required to purchase certain uniform items and to incur work-related expenses.

236.    Colorado Minimum Wage Order 32 states: "Where the wearing of a particular uniform or special apparel is a condition of employment, the employer shall pay the cost of purchases, maintenance, and cleaning of the uniforms or special apparel."

237.    Monarch Casino and Monarch Black Hawk required Hyde and the Tipped Class members to purchase and wear a uniform as a condition to work for Monarch Casino and Monarch Black Hawk, including a Monarch Casino shirt and apron. However, Monarch Casino and Monarch Black Hawk failed to reimburse Hyde and the Tipped Class members for the cost of the uniform in violation of Colorado Minimum Wage Order 32, the Colorado Minimum Wage Act, C.R.S. § 8-6-101, *et seq.*, and the Colorado Wage Claim Act, C.R.S. § 8-4-101, *et seq*.

#### 4TH CAUSE OF ACTION—VIOLATIONS OF THE HFWA AS TO HYDE AND THE HFWA CLASS

238.    Hyde incorporates the allegations in paragraphs 1 through 216.

239.    The conduct alleged in this Complaint violates the HFWA.

240.    At all relevant times, Monarch Casino and Monarch Black Hawk have been "employers" within the meaning of Colorado Wage-and-Hour Law. *See* C.R.S. § 8-4-101(6); COMPS Order, Rule 1.6.

241.    The HFWA guarantees Colorado workers up to 48 hours of paid leave per year, for use for a variety of health and safety purposes, which employees "earn" at a rate of 1 hour of leave for every 30 hours worked.

242. The HFWA applies to Hyde and the HFWA Class members.

243. Monarch Black Hawk and Monarch Casino violated the HFWA.

244. Monarch Black Hawk and Monarch Casino failed to provide the 48 hours of paid leave as required by the HFWA.

245. Monarch Black Hawk and Monarch Casino failed to provide the required notice to inform employees of their rights under the HFWA.

246. Monarch Black Hawk and Monarch Casino failed to pay Hyde and the HFWA Class Members the wages owed to them under the HFWA.

247. C.R.S. § 8-12.3-402(8)(b) states that "Paid sick leave" under the HFWA is "wages" as defined in section 8-4-101(14). By failing to pay the wages owed to Hyde, the HFWA Class members, and the Tipped Class members, Monarch Black Hawk and Monarch Casino have violated Colorado Wage-and-Hour Law. Monarch Black Hawk and Monarch Casino owe significant unpaid wages to Hyde, the HFWA Class members, and the Tipped Class members.

### 5TH CAUSE OF ACTION—FAILURE TO PAY ACCRUED VACATION PAY UNDER COLORADO WAGE-AND-HOUR LAW AS TO HYDE AND THE VACATION PAY CLASS

248. Hyde incorporates the allegations in paragraphs 1 through 216.

249. Colorado INFO #3E states that "Vacation pay is a form of wages protected by the Colorado Wage Act."

250. Under Colorado law, once an employee earns wages, their right to payment is guaranteed.

251.　"Like other wages, unused vacation must be paid when employees separate from employment, whether they are fired with or without cause, resign with or without notice, or separate for another reason." Colorado INFO #3E.

252.　Here, Monarch Black Hawk and Monarch Casino failed to pay Hyde his unused vacation pay.

253.　Monarch Black Hawk and Monarch Casino also failed to pay the vacation pay at the correct hourly rate to Hyde.

254.　Like Hyde, Monarch Black Hawk and Monarch Casino failed to pay the unused vacation pay to the Vacation Pay Class members.

255.　Like Hyde, Monarch Black Hawk and Monarch Casino failed to pay the vacation pay at the correct hourly rate to Tipped Class members.

256.　By failing to pay the wages owed to Hyde, the Vacation Pay Class members, and the Tipped Class members, Monarch Black Hawk and Monarch Casino have violated Colorado Wage-and-Hour Law. Monarch Black Hawk and Monarch Casino owe significant unpaid wages to Hyde, the Vacation Pay Class members, and the Tipped Class members.

**6TH CAUSE OF ACTION—FAILURE TO PAY WAGES UNDER COLORADO WAGE-AND-HOUR LAW AS TO HYDE AND THE DEALER CLASS**

257.　Hyde incorporates the allegations in paragraphs 1 through 216.

258.　Hyde brings this claim on behalf of himself and the Dealer Class members.

259.　At all material times, Hyde and the Dealer Class members have been employees of Monarch Casino and Monarch Black Hawk within the meaning of Colorado Wage-and-Hour Law. *See* C.R.S. § 8-4-101(5); COMPS Order, Rule 1.5.

260.    Colorado Wage-and-Hour Law requires employers to pay employees for all time worked. *See* C.R.S. § 8-4-103; C.R.S. § 8-6-106; COMPS Order, Rule 1.9, Rule 3, and Rule 4.

261.    Under the COMPS Order, Rule 1.9:

> 1.9    "Time worked" means time during which an employee is performing labor or services for the benefit of an employer, including all time s/he is suffered or permitted to work, whether or not required to do so.
>
> 1.9.1    Requiring or permitting employees to be on the employer's premises, on duty, or at a prescribed workplace (but not merely permitting an employee completely relieved from duty to arrive or remain on premises) — including but not limited to putting on or removing required work clothes or gear (but not a uniform worn outside work as well), receiving or sharing work-related information, security or safety screening, remaining at the place of employment awaiting a decision on job assignment or when to begin work, performing clean-up or other duties 'off the clock,' clocking or checking in or out, or waiting for any of the preceding — shall be considered time worked that must be compensated.
>
> 1.9.2    "Travel time" means time spent on travel for the benefit of an employer, excluding normal home to work travel, and shall be considered time worked.

262.    Under the CWA, employers must pay employees their agreed wage rate, which must be at least the applicable minimum wage, for all hours worked. *See* C.R.S. § 8-4-103; COMPS Order, Rule 3.

263.    The CWA provides that "[a]ny agreement … purporting to waive or modify [an] employee's rights in violation of this article shall be void." *See* C.R.S. § 8-4-121; *Barlow v. Westin DEN Operator, LLC*, No. 1:20-cv-01612-DDD-KLM, 2020 U.S. Dist. LEXIS 259845, at *9-13 (D. Colo. Dec. 2, 2020) (holding that Colorado Wage-and-Hour

Law, not the union's collective bargaining agreement, governed minimum wages owed to union employees in Colorado).

264.    Under the CMWA, employers must pay employees at least the applicable minimum wage, which in the City and County of Denver must be at least the Denver minimum wage, for all time worked. *See* C.R.S. § 8-6-101; COMPS Order, Rules 3, 3.2 ("If an employee is covered by multiple minimum or overtime wage requirements, the requirement providing a higher wage, or otherwise setting a higher standard, shall apply"); D.R.M.C. § 58-1 *et seq*. (mandating minimum wage for employees who work in the City and County of Denver).

265.    The wages due to employees under Colorado Wage-and-Hour Law generally must include overtime compensation at a rate of one and one-half times the employees' regular rate of pay for all hours worked in excess of 40 hours per workweek, 12 hours per workday, and/or 12 hours per shift. *See* COMPS Order, Rule 4.

266.    Employers who violate the CWA by failing to pay wages earned by an employee, and who continue to violate the CWA by failing to tender such wages within 14 days of receiving a "written demand" are liable for significant civil penalties. *See* C.R.S. § 8-4-109(3).

267.    Employers who violate the CWA are presumptively liable for attorney's fees and costs incurred by the employee in obtaining their unpaid wages or compensation. C.R.S. § 8-4-110(1)(b).

268.    Employers who violate the CMWA by failing to pay minimum wages and/or overtime compensation for hours worked over 40 hours per workweek, 12 hours per

workday, and/or 12 hours per shift are liable for the unpaid minimum wages and/or unpaid overtime compensation, plus reasonable attorney's fees and costs. *See* C.R.S. § 8-6-118.

269. Claims brought pursuant to the CMWA are subject to a three-year statute of limitations. C.R.S. § 13-80-103.5.

270. Monarch Casino and Monarch Black Hawk violated the CWA by failing to pay Hyde and the Dealer Class members their hourly wage rates for all of the time that they worked, and by failing to pay overtime compensation to Hyde and the Dealer Class members at a rate of one and one-half times their regular rates for all of the hours that they worked over 40 hours per workweek, 12 hours per workday, and/or 12 hours per shift. *See* C.R.S. § 8-4-103; COMPS Order, Rules 3 and 4. Monarch Casino and Monarch Black Hawk also violated the CWA by failing to include all necessary compensation in the calculation of the regular rates of pay for purposes of paying overtime.

271. Monarch Casino and Monarch Black Hawk knew, or through the exercise of reasonable diligence should have known, that their policies violated Colorado Wage-and-Hour Law and, as a result, Monarch Casino's and Monarch Black Hawk's violations were willful. *See* C.R.S. §§ 8-4-109(3)(b)(II), 8-4-122.

272. Based on their violations of Colorado Wage-and-Hour Law, Monarch Casino and Monarch Black Hawk are liable to Hyde and the Dealer Class members for unpaid minimum wages, unpaid regular wages, and unpaid overtime compensation, mandatory penalties under C.R.S. § 8-4-109(3)(b)(I), additional penalties under C.R.S. § 8-4-109(3)(b)(II), reasonable attorney's fees, and the costs incurred by Hyde and the Dealer Class members. *See* C.R.S. §§ 8-4-109(3)(b), 8-4-110, 8-6-118.

**RELIEF SOUGHT**

Hyde prays for judgment against Monarch Casino and Monarch Black Hawk as follows:

    a.    An order certifying a collective action for the FLSA claims;

    b.    An order certifying classes for the Colorado law claims;

    c.    Judgment awarding all unpaid wages, including minimum wages, straight time wages, overtime wages, reimbursement for illegal and unauthorized deductions, expenses, costs, withheld tips, and misappropriated funds, due under the FLSA and Colorado law;

    d.    Judgment awarding all liquidated damages, penalties, and interest under the FLSA;

    e.    Judgment awarding all liquidated damages, penalties, and interest under Colorado law;

    f.    Judgment awarding attorneys' fees to Hyde and the FLSA Collective members, Tipped Class members, Dealer Class members, HFWA Class members, and Vacation Pay Class members;

    g.    Judgment awarding costs of this action to Hyde and the FLSA Collective members, Tipped Class members, Dealer Class members, HFWA Class members, and Vacation Pay Class members;

    h.    Judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Hyde and the FLSA Collective members, Tipped Class members, Dealer Class members, HFWA Class members, and Vacation Pay Class members; and

    i.    All such other and further relief as may be necessary and appropriate.

Respectfully submitted,

*/s/ Don J. Foty*

By: _____

**Don J. Foty**
Texas Bar No. 24050022
**FOTY LAW GROUP**
2 Greenway Plaza, Suite 250
Houston, TX 77046
Telephone: (713) 523-0001
Facsimile: (713) 523-1116
Email: dfoty@fotylawgroup.com

**Matthew S. Parmet**
CO Reg. # 53046
**PARMET LAW PC**
2 Greenway Plaza, Ste. 250
Houston, TX 77046
phone 713 999 5200
matt@parmet.law

**Attorneys for Plaintiff and Class Members**


## JURY DEMAND

Hyde demands a trial by jury on all issues.

*/s/ Don J. Foty*

_____

**Don J. Foty**